ORAL ARGUMENT SCHEDULED FOR JANUARY 11, 2021

No. 20-5088

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CENTER FOR BIOLOGICAL DIVERSITY,
*Plaintiff/Appellant*,

v.

DAVID LONGLY BERNHARDT, U.S. Secretary of the Interior;
UNITED STATES DEPARTMENT OF THE INTERIOR; AURELIA
SKIPWITH, Director of the United States Fish and Wildlife Service;
UNITED STATES FISH AND WILDLIFE SERVICE,
*Defendants/Appellees*.

Appeal from the United States District Court for the District of Columbia
No. 1:18-cv-02576-RC (Hon. Rudolph Contreras)

**FINAL BRIEF FOR APPELLEES**

|  | JONATHAN D. BRIGHTBILL |
|---|---|
|  | *Principal Deputy Assistant Attorney General* |
|  | ERIC GRANT |
|  | *Deputy Assistant Attorney General* |
| Of Counsel: | ANDREW C. MERGEN |
|  | RACHEL HERON |
| JOAN GOLDFARB | DEVON FLANAGAN |
| LINUS CHEN | SOMMER H. ENGELS |
| *Attorney-Advisors* | *Attorneys* |
| Office of the Solicitor | Environment and Natural Resources Division |
| U.S. Department of the Interior | U.S. Department of Justice |
|  | Post Office Box 7415 |
|  | Washington, D.C. 20044 |
|  | (202) 353-7712 |
|  | sommer.engels@usdoj.gov |

**CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES**

**A.    Parties and Amici**

All parties, intervenors, and amici appearing before the district court and in this

Court are listed in the Brief for Appellants.

**B.    Rulings Under Review**

References to the rulings at issue also appear in the Brief for Appellants.

**C.    Related Cases**

Undersigned counsel is aware of no related cases before this or any other court.

s/ Sommer H. Engels
SOMMER H. ENGELS

Counsel for Appellees

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..................................................................................................ii

TABLE OF AUTHORITIES ..........................................................................................v

GLOSSARY ...................................................................................................................xi

INTRODUCTION ...........................................................................................................1

STATEMENT OF JURISDICTION ................................................................................2

STATEMENT OF THE ISSUES.....................................................................................2

PERTINENT STATUTES AND REGULATIONS ........................................................3

STATEMENT OF THE CASE ........................................................................................3

    A.    Statutory background ......................................................................................3

        1.    Endangered Species Act........................................................................3

        2.    Administrative Procedure Act...............................................................5

    B.    Factual background .........................................................................................6

    C.    Procedural history ...........................................................................................8

SUMMARY OF ARGUMENT......................................................................................10

STANDARD OF REVIEW ...........................................................................................13

ARGUMENT .................................................................................................................14

I.    CBD lacks standing to sue under any theory. ........................................................14

    A.    CBD has failed to show that it has suffered any cognizable injury. ...........................................................................................................14

        1.    CBD has not demonstrated that it has suffered a cognizable procedural injury............................................................15

2.     The informational injury test is not applicable to CBD's claims, and CBD fails to satisfy the relevant two-part test in any event...................................................17

     a.     CBD's attempt to recast its procedural injury as an informational injury is unavailing..............................17

     b.     CBD does not plausibly allege that it has been deprived of information that it is entitled by statute to receive. ...................................................20

     c.     CBD does not plausibly allege that it has suffered the harms that Congress sought to prevent by requiring disclosure. .........................................25

          i.     CBD cannot show harm solely by alleging a statutory violation.......................................25

          ii.     CBD has not suffered harms that Congress sought to prevent in enacting § 4(h)...............................................................28

3.     CBD has also not shown that it has suffered an injury to its organizational interests....................................................31

     a.     CBD's attempt to rely on organizational injury as a separate basis for its standing fails. ................................32

     b.     In any event, CBD's organizational standing arguments lack merit.................................................35

B.     Even if CBD has suffered a cognizable injury, it has not shown that a favorable judgment would provide redress..........................38

II.     Even if CBD has standing, it has failed to state a claim.......................................40

CONCLUSION ....................................................................................44

CERTIFICATE OF COMPLIANCE.......................................................45

# TABLE OF AUTHORITIES

## Cases

*American Anti-Vivisection Society v. USDA,*
    946 F.3d 615 (D.C. Cir. 2020) ........................................................... 34, 35

*Arpaio v. Obama,*
    797 F.3d 11 (D.C. Cir. 2015) .............................................................. 8, 13

*Ass'n of Private Sector Colleges & Universities v. Duncan,*
    681 F.3d 427 (D.C. Cir. 2012) ................................................................. 24

*Bennett v. Spear,*
    520 U.S. 154 (1997) ......................................................................... 41, 43

*Brotherhood of Teamsters v. TSA,*
    429 F.3d 1130 (D.C. Cir. 2005) ......................................................... 15, 19

*Browning v. Clinton,*
    292 F.3d 235 (D.C. Cir. 2002) .......................................................... 14, 28

*Byrd v. EPA,*
    174 F.3d 239 (D.C. Cir. 1999) ............................................................... 40

*Cabinet Mountains Wilderness/Scotchman's Peak Grizzly Bears v. Peterson,*
    685 F.2d 678 (D.C. Cir. 1982) ............................................................... 42

*Cierco v. Mnuchin,*
    857 F.3d 407 (D.C. Cir. 2017) ............................................................... 20

*Clapper v. Amnesty International USA,*
    568 U.S. 398 (2013) ............................................................................. 37

*Coalition for Underground Expansion v. Mineta,*
    333 F.3d 193 (D.C. Cir. 2003) ............................................................... 13

*Common Cause v. FEC,*
    108 F.3d 413 (D.C. Cir. 1997) ............................................................... 38

*Competitive Enterprise Institute v. NHTSA,*
    901 F.2d 107 (D.C. Cir. 1990) ......................................................... 34, 36

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ...............................................................................39

*Dickinson v. Zurko,*
    527 U.S. 150 (1999) ...............................................................................42

*Electronic Privacy Information Center v. IRS,*
    910 F.3d 1232 (D.C. Cir. 2018) .............................................................13

*Electronic Privacy Information Center v. Presidential Advisory Commission*
    *on Election Integrity,* 878 F.3d 371 (D.C. Cir. 2017) .....................26, 31-34

*Electronic Privacy Information Center v. U.S. Department of Commerce,*
    928 F.3d 95 (D.C. Cir. 2019)............................................................. 26, 27

*Environmental Defense Center v. Babbitt,*
    73 F.3d 867 (9th Cir. 1995) ...................................................................43

*Ethyl Corp. v. EPA,*
    306 F.3d 1144 (D.C. Cir. 2002) ...................................................... 19, 26

*FEC v. Akins,*
    524 U.S. 11 (1998) .................................................................................21

*Feld Entertainment, Inc.,*
    659 F.3d 13 (D.C. Cir. 2011).....................................................28, 34, 37

*Florida Audubon Society v. Bentsen,*
    94 F.3d 658 (D.C. Cir. 1996)..................................................................16

*Food & Water Watch, Inc. v. Vilsack,*
    808 F.3d 905 (D.C. Cir. 2015) .....................................28, 31, 34, 36, 37

*Foundation on Economic Trends v. Lyng,*
    943 F.2d 79 (D.C. Cir. 1991).......................................................... 18, 36

*Frank v. Autovest, LLC,*
    961 F.3d 1185 (D.C. Cir. 2020) ...................................................... 26, 27

*Friends of Animals v. Bernhardt,*
    961 F.3d 1197 (D.C. Cir. 2020) ...................................................... 30, 36

*Friends of Animals v. Jewell*,
    824 F.3d 1033 (D.C. Cir. 2016) ....................................................... 18, 19, 22, 26, 28

*Friends of Animals v. Jewell*,
    828 F.3d 989 (D.C. Cir. 2016) .............................................................. 20, 25-28, 34

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ................................................................................... 21, 33

*Huron v. Cobert*,
    809 F.3d 1274 (D.C. Cir. 2016) ......................................................................... 33

*In re Swine Flu Immunization Product Liability Litigation*,
    880 F.2d 1439 (D.C. Cir. 1989) ........................................................................ 40

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................................... 25

*MCI Telecommunications Corp. v. FCC*,
    57 F.3d 1136 (D.C. Cir. 1995) .................................................................... 21, 30

*Mpoy v. Rhee*,
    758 F.3d 285 (D.C. Cir. 2014) ........................................................................... 7

*National Ass'n of Homebuilders v. Norton*,
    415 F.3d 8 (D.C. Cir. 2005) ............................................................................ 41

*National Treasury Employees Union v. United States*,
    101 F.3d 1423 (D.C. Cir. 1996) ....................................................................... 37

*Norton v. Southern Utah Wilderness Alliance*,
    542 U.S. 55 (2004) ..................................................................................... 41-43

*Owner-Operator Independent Drivers Ass'n, Inc. v. U.S. DOT*,
    879 F.3d 339 (D.C. Cir. 2018) ................................................................ 20, 26, 27

*People for Ethical Treatment of Animals v. USDA*,
    797 F.3d 1087 (D.C. Cir. 2015) .................................................................. 34, 35

*Preiser v. Newkirk*,
    422 U.S. 395 (1975) ................................................................................... 39, 40

*Public Citizen v. U.S. Department of Justice*,
    491 U.S. 440 (1989) ................................................................ 21, 26

*Public Citizen, Inc. v. FAA*,
    988 F.2d 186 (D.C. Cir. 1993) ..............................................24

*Sierra Club v. EPA*,
    754 F.3d 995 (D.C. Cir. 2014) ..............................................15

*Sierra Club v. Morton*,
    405 U.S. 727 (1972) ................................................................27

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ..............................................15, 26, 27

*Steel Co. v. Citizens for a Better Environment*,
    523 U.S. 83 (1998) ................................................................40

*Summers v. Earth Island Institute*,
    555 U.S. 488 (2009) ..............................................................15

*Thole v. U.S. Bank N.A*,
    140 S. Ct. 1615 (2020) ......................................................14, 38

*Turlock Irrigation District v. FERC*,
    786 F.3d 18 (D.C. Cir. 2015)........................................31, 35, 37

*CBD v. U.S. Department of Interior*,
    563 F.3d 466 (D.C. Cir. 2009) ..............................................16

*Wilderness Society, Inc. v. Rey*,
    622 F.3d 1251 (9th Cir. 2010) ..........................................18, 21

*Zivotofsky v. Secretary of State*,
    444 F.3d 614 (D.C. Cir. 2006) ..............................................27

## Statutes

5 U.S.C. § 551(13) ................................................................... 5, 41-43

5 U.S.C. §§ 701-706 ............................................................................. 2

5 U.S.C. § 702 ...................................................................................... 5

5 U.S.C. § 704 ...................................................................................... 5

5 U.S.C. § 706(1) ....................................................................... 5, 8, 41-43

5 U.S.C. § 706(2) ....................................................................... 5, 8, 41-42

16 U.S.C. §§ 1531-1544 ........................................................................ 2

16 U.S.C. § 1531(b) ......................................................................... 3, 28

16 U.S.C. § 1532(6) ............................................................................. 3

16 U.S.C. § 1532(19) ........................................................................... 18

16 U.S.C. § 1532(20) ............................................................................ 3

16 U.S.C. § 1533 ............................................................................... 3, 7

16 U.S.C. § 1533(a) ............................................................................. 3

16 U.S.C. § 1533(b) .................................................................... 3, 4, 6, 17

16 U.S.C. § 1533(c) .............................................................................. 4

16 U.S.C. § 1533(h) ......................................... 1-5, 8-12, 15, 17, 20-24, 27-31, 39

16 U.S.C. § 1538(a) ............................................................................. 3

16 U.S.C. § 1539(c) ............................................................................ 22

16 U.S.C. § 1540(g) ......................................................................... 5, 41

28 U.S.C. § 1291 .................................................................................. 2

28 U.S.C. § 1331 .................................................................................. 2

## Court Rules

Fed. R. App. P. 4(a)(1)(B) ................................................................2

Fed. R. Civ. P. 12(b)(1) ...............................................................13

## Regulations

50 C.F.R. Part 424 ....................................................................3, 7

50 C.F.R. § 424.11 .......................................................................4

50 C.F.R. § 424.14 ...............................................................3, 4, 17

50 C.F.R. § 424.16 ................................................................. 4, 17

50 C.F.R. § 424.21 .......................................................................4

84 Fed. Reg. 67,060 (Dec. 6, 2019) .................................................7

## GLOSSARY

APA            Administrative Procedure Act

CBD            Plaintiff/Appellant Center for Biological Diversity

ESA            Endangered Species Act

FOIA           Freedom of Information Act

Service        U.S. Fish and Wildlife Service

# INTRODUCTION

Implementation of the Endangered Species Act ("ESA") requires the Fish and Wildlife Service (the "Service") to make a variety of species-specific decisions based on the best available scientific information. In 2012, the Service began preparing reports called "species status assessments" to collect and organize that information for use in its decision-making process. Several documents provide information about the Service's preparation and use of species status assessments, and the primary documents are available online.

Plaintiff/Appellant Center for Biological Diversity ("CBD") contends that the Service committed a procedural error by not publishing and taking public comments on a number of identified and unidentified documents, which CBD argues is required by § 4(h) of the ESA. CBD makes no attempt to show that it meets the test for establishing Article III standing to challenge an agency's procedural error. Instead, CBD argues that it has suffered a cognizable injury because the Service's failure to follow § 4(h)'s procedures deprived CBD of information. But CBD satisfies neither part of the two-part test for establishing Article III standing based on "informational injury." And even if CBD has suffered cognizable informational harms, an order requiring disclosure of information would not redress them because the relevant documents have already been disclosed. The district court was therefore correct to dismiss CBD's complaint for lack of standing. That judgment should be affirmed.

1

## STATEMENT OF JURISDICTION

(A)     The district court had jurisdiction under 28 U.S.C. § 1331 because CBD's claims arise under federal statutes, namely, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706; and the ESA, 16 U.S.C. §§ 1531-1544. Joint Appendix (J.A.) 7-23.

(B)     This Court has jurisdiction under 28 U.S.C. § 1291 because the district court entered a final order dismissing all of CBD's claims. J.A. 65-92.

(C)     The district court entered that order on February 12, 2020. J.A. 5. CBD filed its notice of appeal on April 10, 2020, or 58 days later. J.A. 93. CBD's appeal is timely under Federal Rule of Appellate Procedure 4(a)(1)(B).

(D)     This appeal is from a final order that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

CBD claims that the Service issued "guidelines" relevant to its species status assessment "Program" without following the notice-and-comment procedure set forth in § 4(h) of the ESA. Its complaint was dismissed for lack of standing. This appeal raises the following issues:

1.     Whether CBD lacks standing where it has failed to identify a cognizable injury under any theory, and where it has not shown that a favorable judgment would provide it any redress.

2.     Alternatively, whether CBD has failed to state a claim on which relief can be granted, where it has identified no action that the Service was required to take and instead seeks programmatic improvements.

## PERTINENT STATUTES AND REGULATIONS

All pertinent statutes and regulations are attached to CBD's opening brief.

## STATEMENT OF THE CASE

**A.    Statutory background**

**1.    Endangered Species Act**

Congress enacted the ESA "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b). Once a species is listed as "endangered," *id.* § 1532(6), or as "threatened," *id.* § 1532(20), the ESA and Service regulations provide a variety of protections, *e.g.*, *id.* § 1538(a)(1). Section 4 of the ESA and Service regulations establish processes and standards applicable to the listing and management of threatened and endangered species. *Id.* § 1533; 50 C.F.R. Part 424. These authorities identify the criteria that the Service must apply when it makes or revisits listing decisions, the timing for those decisions, and when and in what capacity the public may participate in the Service's decision-making process.

The listing process begins when the Service receives a petition for listing from an "interested person" or decides on its own to consider a species for listing. 16 U.S.C. § 1533(b)(3)(A); *see also* 50 C.F.R. § 424.14 (describing ESA petition process, including who may petition, petition contents, and timeline for agency response). When the Service assesses a petition, it must consider specific criteria, which are expressly listed

in the statute. 16 U.S.C. § 1533(a)(1); *see also* 50 C.F.R. § 424.11 (identifying factors for listing, delisting, or reclassifying species).

The ESA and its implementing regulations further specify the steps that the Service will take after receiving a listing petition, and the specific time period in which it must make certain required determinations. *See* 16 U.S.C. § 1533(b)(3); 50 C.F.R. §§ 424.14, 424.16(c) (detailing public input procedures); *id.* § 424.17 (identifying relevant timelines). The Service makes listing determinations "solely on the basis of the best scientific and commercial data available . . . after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation . . . to protect such species." 16 U.S.C. § 1533(b)(1)(A).

The Service must also periodically re-evaluate listed species to assess whether they should be removed from the list (delisted), changed from threatened to endangered (uplisted), or changed from endangered to threatened (downlisted). *Id.* § 1533(c)(2); 50 C.F.R. § 424.21. The criteria applicable to initial listing decisions likewise apply to decisions to change a species' listing status. 16 U.S.C. § 1533(a)(1); 50 C.F.R. § 424.11. Interested persons may petition for the listing, delisting, uplisting, or downlisting of a species. 16 U.S.C. § 1533(b)(3). Any change to a species' listing status requires its own rulemaking process, including public review and comment. *Id.* § 1533(b)(5), (c)(2); 50 C.F.R. § 424.16(c).

As relevant here, § 4(h) of the ESA directs the Service to "establish, and publish in the Federal register, agency guidelines to insure that the purposes of [Section 4] are

4

achieved efficiently and effectively." 16 U.S.C. § 1533(h). "Such guidelines shall include, but are not limited to" procedures for recording the receipt and the disposition of listing or delisting petitions, and systems for developing and implementing species recovery plans on a priority basis. *Id.* § 1533(h)(1), (4). The Service "shall provide to the public notice of, and opportunity to submit written comments on, any guideline (including any amendment thereto) proposed to be established under" § 4(h). *Id.* § 1533(h).

The ESA also provides a cause of action for any person to "commence a civil suit on his own behalf . . . against the [Service] where there is alleged a failure of the [Service] to perform any act or duty under section 1533 of this title which is not discretionary with the [Service]." *Id.* § 1540(g)(1)(C).

### 2.    Administrative Procedure Act

As this Court well knows, the APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Agency action" subject to such review "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13). Such review is limited to "final agency action for which there is no other adequate remedy in a court." *Id.* § 704. A court has the authority to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A), and to "compel agency action unlawfully withheld or unreasonably delayed," *id.* § 706(1).

5

**B.      Factual background**

As explained above, the ESA requires the Service to make a number of decisions based "solely on the basis of the best scientific and commercial data available" and "after conducting a review of the status of the species." 16 U.S.C. § 1533(b)(1)(A). Since 2012, the Service in some cases has gathered that information into "species status assessments." The Service has prepared several documents relevant to its use of such assessments, including a 2016 "Framework" document intended to serve as a "support tool" for agency employees preparing the assessments, J.A. 32; and two Memoranda signed by the Service's Principal Deputy Director in 2017 and 2018, J.A. 19, ¶¶ 48-49, J.A. 47-48. The Framework document and a number of other resources relevant to the Service's preparation and use of species status assessments are posted on the Service's website.      https://www.fws.gov/endangered/improving_esa/ssa.html      (providing information about the Service's use of species status assessments, including the 2016 Framework document, a fact sheet, and a video webinar).

As the Framework document puts it, a species status assessment is "in essence a biological risk assessment to aid decision makers who must use the best available scientific information to make policy-guided decisions." J.A. 28. Each species status assessment is a "standalone report" that "provides decision makers with a scientifically rigorous characterization" of a species' status. *Id.* For example, the reports address "the likelihood that the species will sustain populations" given current ecological conditions, and also identify "key uncertainties" in that assessment. *Id.* Each report is "expected to

evolve and be revised over time" as "new information is available or better analytical techniques are developed." J.A. 32. Further, each report is designed to "follow the species," J.A. 28, 31, such that information collected about a species' biological status at one stage in the regulatory process can be available and updated over time for use in subsequent stages.[1]

To be clear: a species status assessment "does not result in a decision directly," J.A. 28, and preparation of such an assessment "does not result in a decision document," J.A. 31. Instead, the reports are used to *inform* agency decisionmaking. *Id.* Nor does preparation of a species status assessment change the standards applicable to the Service's decisions or the opportunities for public participation in that process. Those standards are set by statute, *e.g.*, 16 U.S.C. § 1533, and by regulation, 50 C.F.R. Part 424. Further, when the Service has compiled biological information relevant to a particular decision in a species status assessment, it includes that assessment when it publishes its proposed decision in the Federal Register. *See, e.g.*, 84 Fed. Reg. 67,060, 67,061 (Dec. 6, 2019) (proposed listing decision providing link to relevant species status assessments); J.A. 32 ("Completed [species status assessment] reports should be made publically [sic] available.").

---

[1] In assessing a motion to dismiss, a court may consider any documents attached to or incorporated by reference in the complaint, as was the Framework document here. *Mpoy v. Rhee*, 758 F.3d 285, 291 n.1 (D.C. Cir. 2014).

C.    **Procedural history**

CBD filed its operative three-count complaint in March 2019. J.A. 7-23. CBD's

first claim, brought under the ESA's citizen-suit provision, asserts that the Service failed

to carry out a nondiscretionary duty under § 4(h) of the ESA to publish and provide an

opportunity to comment on "guidelines creating and implementing the [species status

assessment] program, including the [species status assessment] Framework." J.A. 20,

¶ 55. The second and third claims, brought under the APA, assert that the cited

documents were proposed rules triggering the APA's notice-and-comment procedures;

and that the Service's failure to follow those procedures amounted to either an agency

action unlawfully withheld under 5 U.S.C. § 706(1), or agency action "not in accordance

with law" and "without observance of procedure required by law" under 5 U.S.C.

§ 706(2). J.A. 21-22, ¶¶ 57-70. CBD sought a declaratory judgment that the Service's

"failure to publish and provide an opportunity for comment on" the so-called

guidelines violated the ESA and the APA, as well as an order requiring the Service to

"publish and provide an opportunity for comment on the draft and final guidelines."

J.A. 22-23.[2]

---

[2] Although the Service does not concede that the documents at issue are "guidelines" within the meaning of § 4(h), this brief will treat them as such at this stage of the litigation. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (Where the defendant challenges the adequacy of the complaint with respect to standing, "we accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor, as we do in reviewing dismissals for failure to state a claim.").

The Service moved to dismiss all of CBD's claims for lack of jurisdiction and for failure to state a claim. Specifically, the Service argued that CBD had not identified a cognizable procedural injury. ECF 17, at 11-16. CBD did not engage with the Service's argument, asserting that its injuries were informational, not procedural. ECF 19, at 21-22. The district court held that CBD had failed to identify an informational injury and granted the Service's motion. J.A. 75-88, 92. The court agreed that § 4(h) appeared to create a statutory right to the disclosure of guidelines (thereby satisfying the first part of the test for informational standing), J.A. 78-79; but it rejected CBD's argument that CBD had suffered the sort of harm that Congress sought to prevent by requiring disclosure (thereby failing the second part of the test for informational injury), J.A. 80-88. Specifically, the court observed that the harms alleged by CBD did not flow from a lack of information about the guidelines, but rather a lack of other information about "the [species status assessment] process" itself. J.A. 84. The court likewise explained that because the lack of an opportunity to comment is not by itself an injury in fact, a missed opportunity to comment "cannot independently create standing." J.A. 85.

The court further ruled that even if CBD had identified an informational injury, it still lacked standing on that basis because any harm could not be redressed. J.A. 87. Because the documents that CBD had alleged amounted to guidelines under § 4(h) were already public, CBD had not shown how the "remedy requested"—publication of the documents—"would address a future informational injury." *Id.* Because the court decided the case on standing grounds, it reasoned that it did not need to address the

9

Service's argument that CBD's failure to challenge a final agency action was fatal to its claim. J.A. 91 n.15. Nevertheless, the court noted that CBD's assertion that no final agency action was necessary because CBD had brought suit under the ESA's citizen-suit provision was "at odds" with this Court's precedent. *Id.* This appeal followed.[3]

## SUMMARY OF ARGUMENT

CBD challenges the Service's issuance of documents that CBD asserts are guidelines without first undertaking the notice-and-comment process required by ESA § 4(h). Because CBD lacks standing, the district court correctly dismissed its complaint. Alternatively, the dismissal may be affirmed because CBD has failed to state a claim.

1.    a.    CBD lacks standing because it alleges only a bare procedural injury. All of CBD's alleged harms stem from the Service's failure to "provide notice and comment on the species status assessment program's implementing guidelines." Opening Brief at 16, 18, 22, 29 (capitalization altered). But that sort of bare procedural injury is not enough to support standing: a plaintiff must instead allege that the missing procedure affected its substantive interests. CBD's efforts to do that here fail. It speculates, for example, that had the Service provided notice and an opportunity to comment on alleged "guidelines" regarding species status assessments, it might have

---

[3] The district court did not separately assess whether CBD has organizational standing; it reasoned that CBD's failure to identify an informational injury also meant that it lacked organizational standing. J.A. 75-88. The court also assessed and rejected CBD's argument that it had associational standing to sue on behalf of its members. JA 88-91. CBD has not advanced an associational standing argument on appeal.

decided to list a particular species. But CBD does not plausibly link the missing notice-and-comment process with any particular challenged decision.

CBD also asserts that it was deprived of an opportunity to ensure that the Service's development of the guidelines is consistent with the ESA, but that argument fails because CBD has no concrete right to provide such oversight in the first place. And CBD's argument that completion of a notice-and-comment process could have produced information of interest to CBD is merely an effort to sidestep its obligation to identify a substantive injury resulting from the Service's alleged procedural failure.

Procedural injuries aside, CBD has failed to identify a cognizable informational injury because it has satisfied neither part of the applicable two-part test.

*First*, if § 4(h) of the ESA is a disclosure provision at all, it requires only the disclosure of guidelines. But CBD claims that it has been deprived of far more than guidelines, namely information about the § 4 petition process, the Service's use of species status assessments in its decision-making processes, and CBD's opportunities to influence the Service's decision-making. But § 4(h) does not require the disclosure of that sort of information—which is already set forth in the ESA and Service regulations —and CBD's efforts to cast its opportunity to *provide* information in comments as an opportunity to *receive* information from the agency is meritless.

*Second*, even if § 4(h) does require the disclosure of information, CBD has not plausibly alleged that it has suffered the sort of harms that Congress sought to prevent by requiring disclosure. CBD asserts that this failure does not matter because it need

11

only show that the information at issue would "help" it. If the ESA were a broad disclosure statute like the Freedom of Information Act ("FOIA"), then that might be true. But it is not, and thus CBD must show more in order to allege a concrete harm. Because CBD's asserted harms are not supported by facts in its complaint, and because those harms are not the sort that Congress sought to prevent by requiring disclosure, CBD fails to establish standing on this ground as well.

CBD next asserts that its failure to satisfy the informational injury test does not matter because it has suffered a separate organizational injury. But because all of the harms that CBD identifies stem from its claimed informational loss, there is no reason to analyze its claimed organizational injuries separately. Even so, these claims likewise fail, because the harms highlighted by CBD are simply not cognizable under this Court's precedents.

b.    Further, even if CBD had identified a cognizable injury of any sort, it nevertheless lacks standing because it has not shown that a favorable decision would provide redress. CBD seeks an order requiring the Service to publish the guidelines in the Federal Register, for example, but it does not explain why the publication of documents already in its possession would cure its alleged injuries. CBD also seeks an order requiring the Service to take comments on the documents, but it fails to articulate why an opportunity to provide comments would redress its alleged informational harms. Finally, CBD asserts that an order declaring that the Service violated § 4(h) would be useful because it could prevent the Service from creating guidelines without

12

notice and comment in the future, but it fails to link its current harms with future procedural failures, and so such an order would provide no redress.

2.      Even if CBD has standing, it has failed to state a claim. Because the ESA's citizen-suit provision provides a cause of action but no standard of review, CBD's claims are reviewable only if it has challenged (1) a final agency action or (2) the agency's failure to take an action that, if taken, would be a reviewable final agency action. Because CBD identifies no such actions and instead seeks programmatic improvements, its claims are not reviewable.

## STANDARD OF REVIEW

This Court reviews de novo a dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or for failure to state claim under Rule 12(b)(6). *Electronic Privacy Information Center v. IRS*, 910 F.3d 1232, 1236 (D.C. Cir. 2018).

A court may "dispose of a motion to dismiss for lack of subject matter jurisdiction under [Rule] 12(b)(1) on the complaint standing alone" in "appropriate cases." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted). If necessary, however, it "may consider the complaint supplemented by undisputed facts evidenced in the record." *Id.*

In considering a motion to dismiss, a court assumes the complaint's well-pleaded factual allegations to be true and draws all reasonable inferences in the plaintiff's favor. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). But the Court need not accept a

plaintiff's legal conclusions or inferences unsupported by facts in the complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

## ARGUMENT

### I.    CBD lacks standing to sue under any theory.

As the party invoking federal jurisdiction, CBD bears the burden to "demonstrate (1) that [it] suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A*, 140 S. Ct. 1615, 1618 (2020). This Court should affirm the district court's dismissal of CBD's lawsuit because CBD has not satisfied that three-part test. Specifically, CBD has failed to demonstrate that it has suffered a cognizable injury—either under the relevant test for procedural injuries or under the alternative theories on which it relies. And even if CBD had demonstrated an injury here, it would nevertheless fail to satisfy Article III because it has not shown that any such injury is redressable.

### A.    CBD has failed to show that it has suffered any cognizable injury.

CBD offers several theories for why it has suffered an injury that is cognizable under Article III, but none is availing. Although CBD raises a textbook claim of procedural error, it has made no effort to show that it meets the requirements for demonstrating a cognizable *procedural* injury. Instead, CBD argues that the Service's failure to follow notice-and-comment procedures has caused CBD and its members to

suffer an *informational* injury. The informational injury test is inapplicable to the particular claim CBD has raised. And even if that test were applicable, CBD has not satisfied its requirements. Finally, CBD's claimed *organizational* injuries rely on the same basis as its asserted informational injuries and therefore fail for the same reasons.

### 1.    CBD has not demonstrated that it has suffered a cognizable procedural injury.

At its core, this case is about the Service's alleged failure to undertake the notice-and-comment process set forth in § 4(h) of the ESA. Opening Brief at 3, 16, 22, 23, 26; J.A. 9-11, ¶¶ 8-14. But the Supreme Court and this Court have long held that the omission of a procedural requirement—like a requirement to do a notice-and-comment rulemaking—is not by itself enough to create an injury cognizable under Article III. *Summers v. Earth Island Institute*, 555 U.S. 488, 496-97 (2009) (rejecting argument that plaintiffs had standing because they had been deprived of an opportunity to comment on agency activities); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) (explaining that a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III"); *Sierra Club v. EPA*, 754 F.3d 995, 1002 (D.C. Cir. 2014) (reasoning that because plaintiffs "failed to establish that they will likely suffer a substantive injury, their claimed procedural injury—being denied the right to comment on the Memorandum—necessarily fails"); *Brotherhood of Teamsters v. TSA*, 429 F.3d 1130, 1134 (D.C. Cir. 2005) (recognizing that the "mere inability to comment effectively or fully, in and of itself, does not establish an actual injury"); *accord*

*CBD v. U.S. Department of Interior*, 563 F.3d 466, 479 (D.C. Cir. 2009) (The "omission of a procedural requirement does not, by itself, give a party standing to sue.").

Instead, the "plaintiff must show that the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff." *Florida Audubon Society v. Bentsen*, 94 F.3d 658, 664 (D.C. Cir. 1996). Thus, for example, if CBD had alleged that the Service's failure to publish and solicit public comment on the guidelines resulted in a species-specific decision (or any decision at all) that concretely injures CBD or its members' interests, then CBD might have identified a cognizable procedural injury. But CBD makes no such allegations here.

To be sure, CBD describes its frustrations with the Service's review of CBD's petition to list the Rio Grande cutthroat trout, *see* Opening Brief at 10-13, but CBD has not challenged the Service's decision on that petition in this lawsuit. Indeed, CBD has challenged the Service's management of that trout species in a different lawsuit, *CBD v. Bernhardt*, No. 1:16-cv-1932 (D. Colo. July 29, 2016). Instead, CBD here has challenged the agency's failure to provide notice and an opportunity to comment on the Service's guidelines for developing species status assessments, particularly the Framework document. Moreover, many of the events related to the petition that CBD describes occurred long before 2012 (when the group alleges that the Service first started using species status assessments), and *all* of the described events occurred before 2016 (when the Service issued the Framework document). Opening Brief at 10-22. Timing aside, it remains unclear how the Service's failure to solicit public comment on guidelines could

16

have affected CBD's ability to understand how the particular "trout's species status assessment was being developed," *id.* at 12, much less affected the Service's ultimate listing decision.

Nor did CBD's lack of opportunity to participate in a notice-and-comment process affect its opportunity to participate in the Service's decisions to list or delist particular species. *See id.* Section 4 of the ESA and its regulations make clear that no matter how information used to inform a listing decision is assembled, the public has a right to participate first in the petition process, 16 U.S.C. § 1533(b), 50 C.F.R. § 424.14; and again when the Service publishes its findings in the Federal Register, 16 U.S.C. § 1533(b)(3)(B); 50 C.F.R. § 424.16(c)(2). Use of a species status assessment does not render an organization any more or less able to participate in the Service's decision-making process, nor do any of the alleged "guidelines" at issue in this case.

For these reasons, CBD cannot satisfy Article III's test for asserting injury based on the Service's alleged procedural error.

> ## 2. The informational injury test is not applicable to CBD's claims, and CBD fails to satisfy the relevant two-part test in any event.
>
> ### a. CBD's attempt to recast its procedural injury as an informational injury is unavailing.

CBD attempts to avoid the effects of its failure to satisfy the procedural injury test by recasting its procedural injury as an informational injury. Specifically, CBD alleges that it has suffered a substantive harm because, had the Service followed § 4(h),

CBD would have received information about the Service's activities. But CBD cannot make its bare procedural injury actionable by dressing it up as an informational injury. Courts have rightly resisted similar attempts to "simply reframe" alleged "procedural deprivation[s] in terms of informational loss." *Wilderness Society, Inc. v. Rey*, 622 F.3d 1251, 1260 (9th Cir. 2010). After all, if merely identifying some deprivation of information were enough, then it would be easy to sidestep the *Summers* rule in any case where implementation of a particular procedure could result in the disclosure of information. *See id.* (rejecting concept "that procedural deprivations cannot be injuries-in-fact unless they are tied to particular projects *or* unless they result in an informational harm"). Applying that logic in cases under the National Environmental Policy Act, for example, would "eliminate any standing requirement . . . save when an organization was foolish enough to allege that it wanted the information for reasons having nothing to do with the environment." *Foundation on Economic Trends v. Lyng*, 943 F.2d 79, 84-85 (D.C. Cir. 1991). That cannot be.

This Court's holding in *Friends of Animals v. Jewell*, 824 F.3d 1033, 1041 (D.C. Cir. 2016) (*Friends of Animals I*), does not demand a different result. There, the plaintiff did not challenge the Service's failure to follow particular procedures; it challenged the Service's reinstatement of a regulation allowing the take of particular captive antelope species without first obtaining a permit under § 10(a) of the ESA. *Id.* at 1038-39; *see also* 16 U.S.C. § 1532(19) (defining "take"). The Court held that the plaintiff had standing to challenge the reinstatement because the plaintiff frequently participated in the

18

permitting proceedings and used the information that the Service was required to disclose under § 10(c) (including "[i]nformation received by the [Service] as a part of any [permit] application") in its own work. 824 F.3d at 1038-39. Eliminating the permit process cut off the plaintiff's access to third-party materials submitted to the agency and to which the plaintiff would otherwise have no access. *Id.* at 1041.

CBD has not made a similar showing. Here, the primary document that CBD contends is a guideline—the 2016 Framework document—is available online; and whenever the Service prepares a species status assessment for a particular species and relies on the information in the assessment to make a decision requiring public comment, it will provide access to the particular assessment in its Federal Register notice. Thus, CBD's contention that the Service's failure to solicit public comments on and publish the Framework is sufficient to give rise to a cognizable injury has no basis in *Friends of Animals I*; is inconsistent with this Court's precedents, *e.g.*, *Brotherhood of Teamsters*, 429 F.3d at 1135; and lacks a limiting principle.

The Court's decision in *Ethyl Corp. v. EPA*, 306 F.3d 1144, 1148 (D.C. Cir. 2002), is likewise not determinative. There, a manufacturer and marketer of a vehicle lubricant product challenged a regulation of the Environmental Protection Agency ("EPA") that permitted motor vehicle manufacturers to develop their own tests for compliance with motor vehicle emissions standards. *Id.* The petitioner manufacturer asserted that the regulation violated a provision of the Clean Air Act that required EPA to set those standards itself, by regulation. *Id.* As in *Friends of Animals I*, the petitioner in *Ethyl Corp.*

did not challenge the EPA's failure to follow particular procedures; instead, it challenged the agency's promulgation of a regulation that was at odds with a substantive statutory requirement.

Nevertheless, even assuming that the informational injury framework is applicable here, CBD cannot meet this Court's test. Informational injuries have a "narrow scope." *Owner-Operator Independent Drivers Ass'n, Inc. v. U.S. DOT*, 879 F.3d 339, 344 (D.C. Cir. 2018). A plaintiff suffers a cognizable informational injury only when "(1) it has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose to it, and (2) it suffers, by being denied access to that information, the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (*Friends of Animals II*). As elaborated below, CBD satisfies neither element of that test.

### b.    CBD does not plausibly allege that it has been deprived of information that it is entitled by statute to receive.[4]

CBD asserts that this prong of the informational injury test is satisfied because § 4(h) of the ESA is a disclosure provision. Opening Brief at 18-22. But if § 4(h) is a disclosure provision, then it is a limited one. Provisions like § 4(h) "might involve the dissemination of information" through publication in the Federal Register, but they are

---

[4] The Service did not address the first prong of the informational injury inquiry in the district court. But because standing is a jurisdictional requirement, the Service has neither conceded nor waived its opportunity to address it now. *See Cierco v. Mnuchin*, 857 F.3d 407, 415-16 (D.C. Cir. 2017).

"not thereby tantamount to a right to information per se." *Rey*, 622 F.3d at 1259 (refusing to hold that a notice-and-comment provision in the Forest Service Decisionmaking and Appeals Reform Act could support a claim of informational injury). After all, the notice-and-comment process is designed "both (1) to reintroduce public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies; and (2) to assure that the agency will have before it the facts and information relevant to a particular administrative problem." *MCI Telecommunications Corp. v. FCC*, 57 F.3d 1136, 1141 (D.C. Cir. 1995) (internal quotation marks omitted) (discussing notice-and-comment procedures in the APA context). Provisions like § 4(h) are not designed to grant members of the public broad rights to information.

In that regard, § 4(h) is readily distinguishable from the statutory provisions previously held sufficient to support a claim of informational injury, which were promulgated primarily to facilitate the disclosure of information. *See, e.g.*, *FEC v. Akins*, 524 U.S. 11, 21 (1998) (holding that violation of the Federal Election Campaign Act, which imposes extensive reporting and disclosure requirements on political committees, could give rise to a cognizable informational injury); *Public Citizen v. U.S. Department of Justice*, 491 U.S. 440, 449-50 (1989) (holding that a violation of the Federal Advisory Committee Act could yield an informational injury); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 374-75 & n.14 (1982) (explaining that the Fair Housing Act

created a "statutory right to accurate information concerning the availability of housing," the violation of which could support an informational injury).

CBD likens § 4(h) of the ESA to § 10(c) of the same statute, which this Court has previously held to include a disclosure requirement. *See Friends of Animals I*, 824 F.3d at 1041. But § 10(c) more broadly reflects a public-disclosure purpose, because the section not only directs the Service to "publish notice in the Federal Register of each application for" an ESA permit but also provides that "[i]nformation received by the [Service] as a part of any application shall be available to the public as a matter of public record at every stage of the proceeding." 16 U.S.C. § 1539(c).

Indeed, when this Court addressed the § 10(c) provision in *Friends of Animals I,* it made clear that the second part of the section mattered: "Section 10(c) clearly creates a right to information upon which a claim of informational standing may be predicated," because "[u]nder the language of Section 10(c), the Secretary of the Interior must disclose information it receives in connection with any Section 10 permit." 824 F.3d at 1041. The plaintiff in that case was harmed, the Court held, because the regulatory change that it challenged would altogether stop the collection and dissemination of information "relating to permitted takes of U.S. captive-bred herds of the three antelope species," which "directly implicate[d] Section 10's disclosure requirement." *Id.* at 1042.

If § 4(h) entitles CBD to information at all, then that entitlement extends to *guidelines* only. *See* J.A. 78-79 (reasoning that "the text of section 4(h) mandates public disclosure of material, so long as that material is a 'guideline[]' as defined by the

subsection"). That is, CBD is entitled to documents addressing agency "procedures," "criteria," and "system[s]" for implementing § 4. 16 U.S.C. § 1533(h). But CBD does not assert that it has been deprived of that sort of information. After all, the Framework document that CBD cites—if it is a guideline at all—has already been made public. Instead, CBD contends that it lacks "information regarding the [species status assessment] Framework and how it is implemented," Opening Brief at 23; *see also id.* at 10, 24 (similar), as well as information about particular listing decisions, *id.* at 11-12. As the district court correctly recognized, CBD fails to "link up the omission of notice and opportunity for public comment on 'guidelines,' as required by the statutory provision at issue, *see* 16 U.S.C. § 1533(h), to the Center's lack of information concerning an overarching [species status assessment] program." J.A. 84. In essence, CBD asks not only for disclosure of the guidelines but also for disclosure of as much information about the guidelines as it needs to understand their development and application. That is far more information than § 4(h) requires the Service to produce.

CBD further asserts that it has been deprived of "information that would be provided by notice and comment on the guidelines." Opening Brief at 22. CBD argues that the existing public documents leave many of its questions unanswered, and it surmises that (had it been given an opportunity to comment on the guidelines) its "confusion" would have been addressed. *Id.* at 10, 12, 13, 30, 33. But here, CBD conflates § 4(h)'s alleged disclosure requirement with its requirement that the Service solicit and consider public comments. The Service's obligation to solicit and consider

23

comments does not mandate the disclosure of information. Indeed, § 4(h) provides only that the Service "shall provide an opportunity to submit written comments on" proposed guidelines. 16 U.S.C. § 1533(h). That language does not mandate the disclosure of any additional information or require, as CBD appears to assume that it does, that the Service also respond to all of those comments or otherwise answer questions presented therein.

To be sure, a general requirement that agencies "address significant comments" applies to notice-and-comment proceedings. *Ass'n of Private Sector Colleges & Universities v. Duncan*, 681 F.3d 427, 441 (D.C. Cir. 2012) (addressing notice-and-comment rulemaking under the APA specifically). But an agency's obligation to address comments received during that process is not a disclosure requirement at all, much less the sort of disclosure requirement on which a claim of informational injury may be based. Indeed, an agency's obligation to address comments is not "particularly demanding," *id.*; the agency need only show that it "considered the most important objections" and addressed "major issues of policy," *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) (internal quotation marks omitted). CBD's questions and requests for clarification about, for example, "the qualifying criteria for species status assessment team members and the process for assembling specific data," and "what the interested public can

24

expect from species status assessment team decisions," Opening Brief at 24, do not

implicate "major issues of policy" and thus would not necessarily require a response.[5]

### c. CBD does not plausibly allege that it has suffered the harms that Congress sought to prevent by requiring disclosure.

Because CBD has not satisfied the first part of the informational harm inquiry,

this Court need not consider whether it has also satisfied the second. *See Friends of*

*Animals II*, 828 F.3d at 994 (holding that plaintiff lacked standing because it could not

satisfy the first part of the test). In any event, the Court could affirm on the second part

of the test as well. After clarifying the standards applicable to this portion of the

informational injury analysis, we explain why CBD's allegations do not suffice.

### i. CBD cannot show harm solely by alleging a statutory violation.

CBD asserts that this portion of the informational injury analysis is easily satisfied

here because there is "no reason to doubt" that access to the information that it seeks

would help CBD achieve its mission. Opening Brief at 22. And because CBD asserts

that it has been "depriv[ed] of a statutory right to information under the ESA," it

---

[5] CBD's related argument that it "would have provided comments in order to help ensure the Framework's consistency with the purposes of the ESA and the statutory obligations imposed on the Service," Opening Brief at 24, does not demonstrate an informational injury. CBD's lost chance to express its own views plainly does not deprive CBD of any information. Moreover, "[v]indicating the *public* interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive," not of individual litigants. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992).

contends that it need not "allege anything more." *Id.* at 25 (emphasis omitted). Several points warrant clarification.

To be sure, the Court has articulated the second part of the informational injury test solely in terms of whether there is "reason to doubt" that the information requested would help the plaintiff. *See, e.g., Ethyl Corp.*, 306 F.3d at 1148; *Friends of Animals I,* 824 F.3d at 1040-42. But this Court has held "with equal force," J.A. 90, that to satisfy the second prong of the test, the plaintiff must allege that being denied access to information subject to disclosure caused it to suffer "the type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals II,* 828 F.3d at 992; *see also, e.g., Frank v. Autovest, LLC*, 961 F.3d 1185, 1188 (D.C. Cir. 2020); *Electronic Privacy Information Center v. U.S. Department of Commerce*, 928 F.3d 95, 103 (D.C. Cir. 2019); *Owner-Operator Independent Drivers Ass'n*, 879 F.3d at 344; *Electronic Privacy Information Center v. Presidential Advisory Commission on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) (*EPIC*).

In the end, application of the second part of the informational injury test "depend[s] on the nature of the statutory disclosure provision at issue." Opening Brief at 17-18 (quoting *Friends of Animals II*, 828 F.3d at 992). In some limited circumstances, a plaintiff suffers a legally actionable concrete harm when "it simply seeks and is denied specific agency records." *Friends of Animals II*, 828 F.3d at 992 (internal quotation marks and alterations omitted) (quoting *Public Citizen*, 491 U.S. at 449-50); *see also Spokeo*, 136 S. Ct. at 1549. That occurs when, for example, a plaintiff identifies a violation of a statute like FOIA, which creates a statutory entitlement to information so broad that

"[a]nyone whose request for specific information has been denied has standing to bring an action." *Zivotofsky v. Secretary of State*, 444 F.3d 614, 617 (D.C. Cir. 2006); *see also id.* (identifying cases discussing similar statutes).

In other cases, though, it is not enough to identify a violation of a disclosure provision, and the plaintiff must further allege that it has suffered "the type of harm [that] Congress sought to prevent by requiring disclosure." *Friends of Animals II,* 828 F.3d at 992. The plaintiff must, in other words, identify "a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. After all, the "broadening [of] the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury." *Sierra Club v. Morton*, 405 U.S. 727, 738 (1972); *see also, e.g., Frank*, 961 F.3d at 1188 (rejecting argument that because plaintiff had alleged a violation of statute requiring the disclosure of truthful information, she "need not prove any additional harm" (emphasis omitted)); *Electronic Privacy Information Center*, 928 F.3d at 103 (rejecting argument that a violation of a statute requiring the preparation and disclosure of a privacy report in certain instances yields an automatic harm); *Owner-Operator Independent Drivers Ass'n*, 879 F.3d at 344 (explaining that even plaintiffs who claim to have suffered an informational injury must "suffer real harm to support standing").

If § 4(h) of the ESA is a disclosure provision at all, it is *not* the sort of disclosure provision the violation of which automatically yields a cognizable harm. After all, unlike FOIA, the ESA was not "intended . . . to provide a broad right to information." *ASPCA*

27

*v. Feld Entertainment, Inc.*, 659 F.3d 13, 24 (D.C. Cir. 2011). Indeed, any disclosure provisions in the ESA are "secondary" to the statute's primary purpose—"to conserve endangered and threatened species." *Id.*; *see also* 16 U.S.C. § 1531(b). Thus, it is not enough for CBD to merely allege that the Service has violated a disclosure provision; it must instead "allege that nondisclosure has caused it to suffer the kind of harm from which Congress, in mandating disclosure, sought to protect individuals or organizations like it." *Friends of Animals II*, 828 F.3d at 992.

To be sure, this Court applied the "no reason to doubt" test in *Friends of Animals I*, 824 F.3d at 1041, which implicated § 10(c) of the ESA. But that decision predated the Court's decision in *Friends of Animals II*, 828 F.3d at 992, and as explained above (p. 22), the disclosure requirement of § 10(c) is broader than that of § 4(h).

### ii.    CBD has not suffered harms that Congress sought to prevent in enacting § 4(h).

As explained above, *all* of CBD's harms are bare procedural harms because they stem solely from the government's failure to publish and take comments on the guidelines. *See supra* pp. 15-17. Even if this Court holds that § 4(h) can be considered a disclosure provision, CBD's effort to satisfy the second part of the informational injury test nevertheless fails on several grounds.

A number of CBD's assertions are not supported by facts in its complaint, and so this Court need not accept them. *Browning*, 292 F.3d at 242; *see Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015) ("[I]nferences that are unsupported

by the facts set out in the complaint" do not support standing.). CBD asserts, for example, that the Service' failure to post the guidelines "preclud[es] [CBD] from knowing how the Service informs its ESA decisions made under section 4 of the Act," including "listing and critical habitat decisions." Opening Brief at 23. CBD further asserts that it lacks information about "how protection decisions are made, how public comments are considered during the species status assessment process, and ultimately how decisions affecting the very survival of species are made," *id.* at 30 (internal alterations omitted), and that being deprived of that sort of information prevents it from knowing how to "effectively petition for the listing of species," *id.* at 37.

But CBD's operative complaint provides no support for those contentions, because it identifies no reason to believe that the guidelines have changed the standards set forth in § 4 or in the applicable regulations. Those statutory and regulatory standards provide the information that CBD asserts it now lacks. They describe the receipt and processing of petitions, the standards applicable to the Service's decisions, the quality of information the Service must use to inform its decisions, and the opportunities that the interested public will have to participate in the Service's decision-making processes. *See supra* pp. 3-5. Those standards have not changed. Further, the 2016 Framework document states clearly that preparation of a species status assessment "does not result in a decision document." J.A. 31. Instead, the reports are used to *inform* agency decisionmaking occurring under those preexisting statutory and regulatory standards.

Moreover, the district court correctly concluded that the sorts of harms alleged by CBD are not the sort that Congress sought to prevent by requiring disclosure. As the district court put it, the "problem for [CBD] is that [its] filings do not link up the omission of notice and opportunity for public comment on 'guidelines,' as required by [§ 4(h)]," to CBD's "lack of information concerning an overarching [species status assessment] program." J.A. 84. Indeed, if § 4(h) requires disclosure at all, then the disclosure is intended to ensure that the public has an informed opportunity to participate in the Service's formulation of guidelines, *see MCI Telecommunications*, 57 F.3d at 1141, and not to provide information about the Service's use of species status assessments in all cases or its implementation of the ESA more broadly.

Here, however, CBD asserts that it is harmed because it does not know "how the Service informs its ESA decisions," Opening Brief at 23; has been "forced to submit listing petitions and advocate for recovery plans without fully understanding the Program's 'underlying policy objectives,'" *id.* at 26; has lingering "concerns about the Framework," *id.* at 24; and has not been able to "advocate for the development of robust recovery plans," *id.* at 37; *see also* J.A. 9-11, ¶¶ 11-14. In short, CBD asserts that the Service's failure to provide notice and an opportunity to comment on guidelines prevents the group from engaging with the agency through the *petition* process. But that sort of harm is "not concrete under [this Court's] precedent," *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1208 (D.C. Cir. 2020) (*Friends of Animals III*), and is not the sort of harm that Congress sought to prevent in requiring disclosure.

30

Finally, even if this Court holds that § 4(h) can be considered a disclosure provision, a number of CBD's alleged harms fail because they relate not to the *receipt* of information, but to the opportunity to *provide* information through comments. For example, CBD alleges that it was deprived of an opportunity to "provide[] comments in order to help ensure the Framework's consistency with the purposes of the ESA and the statutory obligations imposed on the Service," Opening Brief at 24 (citing J.A. 11, ¶ 14; J.A. 53-55, ¶¶ 15-19), and that it missed its chance to provide "input in the process leading up [to] the[] adoption" of species status assessments, *id.* at 30. These harms remain purely procedural; they involve no right to information at all. *See supra* pp. 15-17. Thus, they cannot support CBD's claim to have suffered an informational injury.

### 3.    CBD has also not shown that it has suffered an injury to its organizational interests.

Organizational standing exists where (1) an "agency's action or omission to act injured the organization's interest"; and (2) "the organization used its resources to counteract that harm." *Food & Water Watch*, 808 F.3d at 919 (internal quotation marks and alterations omitted). The plaintiff organization must identify "more than simply a setback to the organization's abstract social interests," *EPIC*, 878 F.3d at 378; it must instead allege that the "defendant's conduct perceptibly impaired the organization's ability to provide services," *Turlock Irrigation District v. FERC*, 786 F.3d 18, 24 (D.C. Cir. 2015) (internal quotation marks omitted).

### a.     CBD's attempt to rely on organizational injury as a separate basis for its standing fails.

All of CBD's organizational standing arguments fail because they are based solely on CBD's claim that it has been deprived of information. *See* Opening Brief at 35-38. As just explained (pp. 20-31), CBD fails to satisfy the two-part test for informational injury, and so it also lacks organizational standing on that basis. *See* J.A. 89 n.13 (explaining that CBD attempted to support its standing as an organization based on allegations of informational harm).

CBD asserts that it has suffered a series of organizational injuries "[s]eparate and apart from" its alleged informational injuries, Opening Brief at 35-38, but this Court should deny CBD a second bite at the apple for several reasons. To start, CBD did not advance a separate organizational injury theory in the district court. Instead, it argued that it had "associational standing," articulated the test for associational standing, and asserted that it has "organizational standing *on behalf of its members*." J.A. 89 n.13 (emphasis added). Recognizing that CBD "at no point contend[ed] that it seeks standing on its own behalf for any reason other than an informational harm," *id.*, the district court consequently considered only whether CBD had suffered an informational injury to its interests as an organization, J.A. 75-88; and whether it had suffered an associational injury, J.A. 88-91.

In this Court, however, CBD asserts that it has suffered an informational injury and a *separate* organizational injury that could sustain standing even if CBD does not

satisfy the informational injury test. *See* Opening Brief at 35 ("*Alternatively*, the Service's failure to provide notice and comment . . . has inflicted organizational injury on [CBD] by depriving it of key information . . . ." (emphasis added and capitalization altered)). But that argument is forfeited because CBD did not raise it in the district court: "it is not the province of an appellate court to hypothesize or speculate about the existence of an injury [the plaintiff] did not assert to the district court," and so arguments in support of standing may not be presented for the first time on appeal. *Huron v. Cobert*, 809 F.3d 1274, 1280 (D.C. Cir. 2016) (internal quotation marks omitted).

In any event, CBD's effort to cast organizational standing as a separate basis for injury fails. "[O]rganizational standing is merely the label assigned to the *capacity* in which the organization contends it has been harmed; it is not a separate *type* of injury." *EPIC*, 878 F.3d at 381 (Williams, J. concurring); *see also, e.g.*, *Havens Realty Corp.*, 455 U.S. at 378 (considering whether organization had "standing in its own right"). CBD alleges only informational injuries. *See* Opening Brief at 37-38. If CBD cannot satisfy the two-part test for such an injury, then it cannot base standing on an informational loss in the abstract. *See EPIC*, 878 F.3d at 379 (holding that plaintiff lacking informational standing also lacked organizational standing because a plaintiff "cannot ground organizational injury on a non-existent interest"). Put another way, if CBD could create an organizational injury based on a lack of information without identifying a right to that information, then there would be no reason to apply the test for informational injury.

Of course, this Court has undertaken separate informational and organizational standing analyses in the past, but that approach makes sense only when the organizational plaintiff has identified both informational injuries and non-informational injuries. *See, e.g., Feld Entertainment,* 659 F.3d at 22-26. "Where an organization's only asserted injury is an informational one," however, then this Court generally does "not engage[] in a separate analysis of informational and organizational injury." *EPIC*, 878 F.3d at 381 (Williams, J. concurring) (citing *Friends of Animals II,* 828 F.3d at 992); *see also, e.g., Competitive Enterprise Institute v. NHTSA*, 901 F.2d 107, 122 (D.C. Cir. 1990).

Neither *People for Ethical Treatment of Animals v. USDA,* 797 F.3d 1087 (D.C. Cir. 2015) (*PETA)*, nor *American Anti-Vivisection Society v. USDA*, 946 F.3d 615 (D.C. Cir. 2020), *cited in* Opening Brief at 28-29, supports CBD's effort to rely on organizational injuries as a separate basis for standing here. In *PETA*, the injuries alleged were not purely informational, as they are here. Instead, the plaintiff organization asserted that the failure of the U.S. Department of Agriculture ("USDA") to apply its Animal Welfare Act regulations to birds harmed it because (1) the organization was unable to file complaints of bird abuse with USDA; and (2) the organization lacked access to reports that USDA would have generated had it applied the regulations. *Id.* at 1094-97; *accord Food & Water Watch*, 808 F.3d at 920 (explaining that the *PETA* plaintiff suffered two separate injuries). Thus, the court assessed the organization's standing on its own, without also considering the organization's statutory entitlement to information. 797 F.3d at 1094-97.

In *American Anti-Vivisection Society*, moreover, the Court *did* consider the elements of informational standing in its analysis, noting that the plaintiff sought information that it alleged the government was "legally required" to produce, and that its injury "flows directly" from the government's failure to produce it. 946 F.3d at 619. And in so reasoning, the court cast doubt on the analysis in *PETA*, noting that there the Court held that the plaintiff had standing even though "it had no legal right to the incident reports it sought." *Id.* (citing *PETA*, 797 F.3d at 1103 (Millett, J., dubitante)).

Thus, because CBD's organizational standing arguments are based on CBD's alleged informational losses, they fail for the reasons discussed above (pp. 20-31), and this Court need not address them as separate injuries.

### b.    In any event, CBD's organizational standing arguments lack merit.

CBD begins by asserting that because it has been deprived of the guidelines, it was and remains unable to "effectively petition for the listing of species and to advocate for the development of robust recovery plans." Opening Brief at 37 (citing J.A. 9-10, ¶¶ 11-12; J.A. 49, ¶ 1; J.A. 51, ¶ 8). Even if this allegation were supported by facts in the complaint—and it is not, *see supra* p. 29—it nevertheless fails because this sort of frustration of CBD's activities is the type of abstract harm that does not impart standing. *Food & Water Watch*, 808 F.3d at 921. Indeed, spending resources on petitioning and advocacy "is not a cognizable Article III injury," no matter "whether the advocacy takes place through litigation or administrative proceedings." *Turlock*, 786

F.3d at 24; *accord Friends of Animals III*, 961 F.3d at 1208 (explaining that harms to an organization's "interests in advocacy, participating in administrative proceedings, and lobbying" are "not concrete under [this Court's] precedent").

CBD next asserts that the Service's "failure to provide notice and comment on the Program has impaired [CBD's] ability to inform and educate its members and the public about the Service's implementation of the ESA." Opening Brief at 37. But as discussed above (pp. 30-31), CBD does not explain how being deprived of an opportunity to comment on the Service's guidelines deprives the group of information about either the guidelines or the "Program" to which they allegedly apply.

Further, this Court has squarely rejected the "proposition that an organization's desire to supply environmental information to its members, and the consequent 'injury' it suffers when the information is not forthcoming . . . establishes standing without more." *Lyng*, 943 F.2d at 84-85. "Allegations of injury to an organization's ability to disseminate information may be deemed sufficiently particular for standing purposes" only "where that information is essential to the injured organization's activities, and where the lack of the information will render those activities infeasible." *Competitive Enterprise Institute*, 901 F.2d at 122. CBD makes no such allegations here.

CBD's allegation that it is harmed because it has spent resources submitting FOIA requests, Opening Brief at 38, is similarly unavailing because CBD again fails to provide the necessary specifics. To ground standing on the expenditure of resources, a plaintiff must show that it spend resources "beyond those normally expended," *Food &*

*Water Watch*, 808 F.3d at 920, and CBD makes no such allegation here. Further, because CBD's filing suggests that it has submitted FOIA requests as a predicate for future lobbying, advocacy, and petitioning activities, *see* Opening Brief at 33-34, CBD's expenditures do not amount to cognizable injuries, *see Turlock*, 786 F.3d at 24.

Likewise, CBD's vague assertion that it has "dedicated a significant amount of staff time in an attempt to understand the Program and how it might affect [CBD's] mission," Opening Brief at 38, is plainly insufficient to establish that the Service's actions have indeed harmed (or will imminently harm) it. *See Clapper v. Amnesty International USA*, 568 U.S. 398, 402 (2013) (explaining that plaintiffs "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending"). Thus, CBD cannot establish standing on this basis either.

Finally, if "challenged conduct affects an organization's activities, but is neutral with respect to its substantive mission," this Court has still "found it 'entirely speculative' whether the challenged practice will actually impair the organization's activities." *Feld Entertainment*, 659 F.3d at 25 (quoting *National Treasury Employees Union v. United States*, 101 F.3d 1423, 1430 (D.C. Cir. 1996)). Here, CBD does not explain how the Service's alleged procedural failure is at odds with CBD's mission "of advocating for and protecting endangered and threatened species." Opening Brief at 3.

**B.**     **Even if CBD has suffered a cognizable injury, it has not shown that a favorable judgment would provide redress.**

For the foregoing reasons, CBD has failed to show that it has a cognizable injury under any theory. Even assuming it had adequately demonstrated injury, CBD would independently lack standing because it cannot meet Article III's redressability prong.

A plaintiff who claims to have suffered an informational injury must still show that a favorable judgment would provide redress. *See Thole*, 140 S. Ct. at 1618. CBD's arguments fail in this regard. The relief to which CBD would conceivably be entitled had it suffered informational injury—an order requiring the Service to disclose the guidelines—would provide no redress: the documents that CBD asserts are guidelines *have already been disclosed*. CBD argues that publication of the documents "in the Federal Register would better inform the Center about the guidelines by which species status assessments are developed," Opening Brief at 33, but it does not explain why publishing in the Federal Register documents that it already possesses would make a difference.

CBD also argues that an order "requiring the Service to provide notice of and an opportunity to comment on the guidelines" would redress its harms, Opening Brief at 32, but that sort of relief does not flow from CBD's alleged informational injuries and thus it is not available to CBD. *Cf. Common Cause v. FEC*, 108 F.3d 413, 418 (D.C. Cir. 1997) (holding that plaintiff's theory of informational injury did not confer standing to request that an agency "'get the bad guys,' rather than disclose information").

Further, CBD "must demonstrate standing separately for each form of relief sought," *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (internal quotation marks omitted), and it has not made the demonstration necessary to obtain an order requiring the Service to undertake notice and comment. As explained above (pp. 15-17), CBD has not alleged cognizable harms resulting from a missed opportunity to participate in a notice-and-comment process, because it does not link that procedural omission with a substantive harm, and the alleged lost opportunity to comment is not a plausible informational injury.

CBD's arguments that declaratory judgment would redress its harms, Opening Brief at 34-35, likewise do not advance its position. CBD asserts that a declaratory order would "put[] the agency on notice that it is not free to disregard section 4(h)," *id.* at 32, and "ensure the Service publishes any future amendments to the Framework or any of the Program's other implementing guidelines," *id.* at 35. But CBD's request for an order telling the Service how to act in the future is merely a request for an advisory opinion, which no federal court has authority to issue. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). Likewise, because CBD has not alleged that any future failure to publish future amendments harms it now—or will imminently harm it in the future—it remains unclear how a declaratory order addressing such future activities would redress harms stemming from the Service's past actions. It would provide only "psychic satisfaction,"

which "is not an acceptable Article III remedy because it does not redress a cognizable Article III injury." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998).[6]

Thus, even if CBD had identified a cognizable informational injury, it still lacks standing because it has failed to show that a favorable order would redress that injury.

\*       \*       \*       \*       \*

For all of these reasons, CBD lacks standing, and the district court's dismissal of its complaint on that basis should be affirmed.

## II.   Even if CBD has standing, it has failed to state a claim.

This Court need not consider CBD's remaining arguments because the district court's order should be affirmed on standing grounds. If the Court holds that CBD lacks standing, it should decline CBD's request to consider whether CBD has stated a claim, Opening Brief at 40 n.11, since doing so would result in an advisory opinion. *See Preiser*, 422 U.S. at 401. If this Court *does* hold that CBD has standing, however, then it may nonetheless affirm dismissal of its complaint for failure to state a claim. *In re Swine Flu Immunization Product Liability Litigation*, 880 F.2d 1439, 1444 (D.C. Cir. 1989).

---

[6] The Court's decision in *Byrd v. EPA*, 174 F.3d 239, 244 (D.C. Cir. 1999), *cited in* Opening Brief at 34, is inapposite. There, the plaintiff was harmed not by EPA's failure to comply with a statute requiring the disclosure of committee notes, but rather its failure to share the notes "until long after they would have been of any use to" the plaintiff. 174 F.3d at 224. The Court held that declaratory relief would redress the plaintiff's injury because it would allow him to attack subsequent agency proceedings that relied on a particular report challenged in that litigation. *Id.* CBD does not make a similar timeliness argument here, and it challenges no particular agency action.

It is worth clarifying which claims are *not* before this Court. CBD's operative complaint included three claims: one under the ESA's citizen-suit provision challenging the Service's failure to carry out a nondiscretionary duty, *see* 16 U.S.C. § 1540(g)(1)(C); one under APA § 706(1) challenging an agency action unlawfully withheld; and one under APA § 706(2) challenging an agency action "not in accordance with law" and "without observance of procedure required by law." J.A. 20-22, at ¶¶ 52-70. CBD states in its Opening Brief (at 14, 39), that only the ESA claim is before the court on appeal, and so the Service understands CBD to have abandoned its APA claims.[7]

At this point, then, only CBD's ESA citizen-suit claim remains. In the district court, the Service argued that this claim should be dismissed for lack of a *final agency action* because plaintiffs seeking to review agency action for compliance with the ESA— including under the ESA's citizen-suit provision—must identify a final agency action. ECF 17 at 16-20. As this Court has explained, because there "exists no statutory review provision in the ESA that authorizes judicial review of agency action beyond that provided for in the APA . . . , an agency action must be final in order to be judicially reviewable." *National Ass'n of Homebuilders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005)

---

[7] If CBD has not abandoned them, they fail in any event. The § 706(2) claim fails because CBD has not challenged a final agency action, *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). The § 706(1) claim fails because it is merely a recasting of the § 706(2) claim and because CBD identifies no withheld agency action within the meaning of 5 U.S.C. § 551(13). *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 62 (2004) (holding that a § 706(1) claim may proceed only when the plaintiff identifies a "discrete agency action" that the agency was required to take, and looking to 5 U.S.C. § 551(13)'s definition of "action"); *see also infra* p. 42.

41

(internal quotation marks omitted). After all, even though the ESA's citizen-suit provision provides a cause of action, judicial review is conducted under the standard set by the APA. *See Cabinet Mountains Wilderness/Scotchman's Peak Grizzly Bears v. Peterson*, 685 F.2d 678, 685 (D.C. Cir. 1982) ("Since the ESA does not specify a standard of review, judicial review is governed by section 706" of the APA); *see also Dickinson v. Zurko*, 527 U.S. 150, 154 (1999) (recognizing "the importance of maintaining a uniform approach to judicial review of administrative action").

In this Court, CBD contends that the final agency action requirement does not apply to its ESA citizen-suit claim because CBD challenges the Service's failure to act, and not the guidelines themselves. Thus, according to CBD, its claim is less like an APA § 706(2) claim and more like an APA § 706(1) claim. Opening Brief at 39 n.10; *see also* 5 U.S.C. § 706(1) (authorizing judicial review of claims to compel agency action "unlawfully withheld or unreasonably delayed"). This tack is also unpersuasive.

Even if CBD need not identify a final agency action to pursue that claim, its effort to align its citizen-suit claim with APA § 706(1) is of no use because the standards applicable to review under the APA apply here as well. *Cabinet Mountains Wilderness*, 685 F.2d at 685; *Dickinson*, 527 U.S. at 154. Suits under APA § 706(1) may proceed only when the plaintiff identifies a discrete action that the agency was required to take. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). And the "action" at issue must be the sort of action identified in APA § 551(13)—an "agency rule, order, license, sanction [or] relief," or "the equivalent or denial thereof, or failure to act." 542 U.S. at

42

64; *see also id.* at 62 (explaining that "failure to act" in this context means a "failure to take an *agency action*—that is, a failure to take one of the agency actions (including their equivalents)" that is "defined in § 551(13)").

Here, though, CBD identifies no discrete action that the Service was required to take. It does not assert, for example, that the Service failed to act on a proposed listing decision within a year, as ESA § 4(b)(6)(A) requires. *See, e.g., Environmental Defense Center v. Babbitt*, 73 F.3d 867, 872 (9th Cir. 1995). Instead, it contends that the Service failed to follow a procedure. But an agency's failure to follow a procedure in the abstract is not reviewable under § 706(1)—no matter whether the ESA provides a cause of action.

Further, it is clear from CBD's brief and pleadings that it is concerned about how the Service implements what CBD calls the species status assessment "Program." *See, e.g.*, Opening Brief at 12 (expressing "confusion around the Program"), *id.* at 23, 26 (similar). Even if the Service's use of species status assessments could fairly be characterized as a "program," such "[p]rogrammatic improvements" are better left to agencies and Congress than to courts. *Norton*, 542 U.S. at 64. More fundamentally, the ESA's citizen-suit provision is not a mechanism for effecting programmatic changes; it is instead focused on compelling the performance of specific, nondiscretionary actions. *See Bennett*, 520 U.S. at 173. Because CBD has failed to identify such an action here, it cannot obtain review, regardless of its desire to see the statute implemented differently.

Therefore, CBD's complaint could also have been dismissed for failure to state a claim, and the judgment below may be affirmed on that basis.

43

## CONCLUSION

For the foregoing reasons, the district court properly dismissed CBD's amended complaint, and its judgment should be affirmed.

Respectfully submitted,

s/ Sommer H. Engels

JONATHAN D. BRIGHTBILL
*Principal Deputy Assistant Attorney General*
ERIC GRANT
*Deputy Assistant Attorney General*

Of Counsel:                          ANDREW C. MERGEN
                                     RACHEL HERON
JOAN GOLDFARB               DEVON FLANAGAN
LINUS CHEN                   SOMMER H. ENGELS
*Attorney-Advisors*          *Attorneys*
Office of the Solicitor      Environment and Natural Resources Division
U.S. Department of the Interior   U.S. Department of Justice

November 30, 2020
90-8-6-08239

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Rule 32(f), this document contains 11,582 words.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond font.

s/ Sommer H. Engels
SOMMER H. ENGELS

Counsel for Appellees
